**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**MEMPHIS SHELBY COUNTY SCHOOLS,**

        Plaintiff.

**v.**

**K.B., by and through his Parent, K.B.,**

        Defendant.

No.: _____

---

**COMPLAINT FOR JUDICIAL REVIEW**
**OF FINAL ORDER RESULTING FROM**
**REMAND TO ADMINISTRATIVE LAW JUDGE**

---

Comes Now, Shelby County Board of Education, operating as Memphis-Shelby County Schools ("School District"), and files this Complaint for Judicial Review of a Tennessee Administrative Law Judge's Final Order on Remand from the District Court in an Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §1400, et seq., pursuant to 20 U.S.C. § 1415(i)(2)(A).

## **INTRODUCTION**

1.     This is a procedurally complex case that originated from an IDEA due process complaint filed by Defendants/Petitioners on or about October 6, 2021.

2.     Unfortunately, the case has been made unnecessarily complex by Defendants/Petitioners' failure to present evidence in support of a compensatory education award for the minor student at the heart of this case, K.B.

3.      Defendants/Petitioners have had four evidentiary opportunities to present proof of appropriate compensatory education for K.B., including three multi-day evidentiary hearings which took place during March-April 2022, December 2023-January 2024, and December 2024 as well as the submission of affidavits/declarations in January 2025, yet Defendants/Petitioners have failed to present proof that complies with the legal standards for awarding compensatory education in an IDEA case.

4.      Most recently, the Tennessee Administrative Law Judge (ALJ) issued a February 10, 2025 Final Order after PFR, following the School District's Petition for Reconsideration, and ordered that the School District:

shall fund 3, 105 hours of ABA [Applied Behavioral Analysis] therapy services provided by an RBT [Registered Behavioral Technician] supervised by a BCBA [Board Certified Behavioral Technician], or by the BCBA directly.

- The amount of the fund is calculated as follows:
  o    RBT (3, 105 x 80%) x $83.75 = $208, 035.00
  o    BCBA (3,105 x 20%) x $121.25 = $75, 296.25
  TOTAL = $283, 331.25

- Parent will select from whom, how, what and when these compensatory services are provided.

- Parent K.B. shall provide invoices to the Respondent [School District] for the payment services rendered, which Respondent shall pay.

Ex. 1 Feb. 10, 2025 Final Order after PFR at p. 4.

5.      The February 10, 2025 Final Order after PFR and the January 6, 2025 Final Order it revised are erroneous.

6.      The District Court should review and overturn the February 10, 2025 Final Order on and the January 6, 2024 Final Order on grounds that they apply the incorrect standard for an award of compensatory education under the IDEA.

7.      The ALJ applied the incorrect legal and evidentiary standards to Defendants'/Petitioners' proof in support of a compensatory education award.

8.      The ALJ incorrectly accepted the testimony of Defendants'/Petitioners' experts that "[b]ased on the trajectory of progress that K.B. was making at Innovations of Learning, a learning center in which K.B. received services from 2018-2022, it is likely that over time K.B. would have been able to 'catch-up' to his non-disabled peers in many areas. He would have probably still need support throughout his life but would have likely been able to do many things independently. (Ex. 14; Remand T.R. Vol. I, pp. 82-83)." Ex. 2- Jan. 6, 2025 Final Order on Remand.

9.      The ALJ also incorrectly found that "[t]he progress made in a first year [of ABA therapy] is a good predictor of how much progress will be made with the future years of services. (Remand T.R. Vol. I, p. 82)."  Ex. 2- Jan. 6, 2025 Final Order on Remand.

10.     The ALJ incorrectly relied on K.B.'s rate of improvement during his time Innovations of Learning (an ABA therapy center, not a school) before he relocated from out-of-state to Shelby County, Tennessee of 57% as setting a baseline for his future rate of improvement in an educational setting. Ex. 2- Jan. 6, 2025 Final Order on Remand.

11.     He incorrectly determined that "[c]ompared to his time receiving ABA therapy at Innovations of Learning (57% rate of improvement over the last testing period), K.B. was on a flatter, lesser trajectory toward progress with skill acquisition at MSCS through April 2023 (30%). His rate of improvement was more on track with his typical peers when he was receiving ABA therapy services at Innovations of Learning. (Remand T.R. Vol. III, pp. 344-346; Remand T.R. Vol I, pp. 82-83)." Ex. 2- Jan. 6, 2025 Final Order on Remand.

12.     In doing so, the ALJ did not give sufficient weight to the progress that K.B. made since receiving ABA services provided by the School District through his Individual Education Plans (IEP) and through the compensatory education services that the ALJ originally ordered for the School District to provide pursuant to the May 17, 2022 Final Order on the October 6, 2025 IDEA Due Process Complaint.

13.     Additionally, the ALJ failed to give sufficient weight to the fact that the progress that K.B. has made since receiving ABA services through MSCS measures more complex skills than the skills measured by the data taken during the time K.B attended Innovations in Learning.

14.     The ALJ improperly considered that a rate of improvement for achieving skills for children 12-48 months can be applied to a rate of improvement for achieving skills for children 6-7 years old or greater.

15.     The ALJ found that most children receive ABA therapy at a higher intensity for the first two years and that the goal is to taper down the ABA therapy services, but failed to consider that K.B received the first two years of intensive ABA therapy services from August 2018 through March 2020, and that MSCS has been providing him with ABA services for an additional three years from May 2022 continuing to date.

16.     The ALJ applied the incorrect legal standard and reasoning to reach these factual and legal determinations, including that "[Defendants/]Petitioners provided evidence specific to K.B. to show a loss of learning trajectory that he experienced due the lack of ABA services during the 2020-2021 and 2021-2022 school years" but Defendants/Petitioners did not consider K.B.'s post-May 17, 2022 progress. Ex. 2, Jan. 6, 2025 Final Order on Remand.

17.     The ALJ wrongfully credited the testimony of Dr. Irby and Mr. Ferris,

Defendants/Petitioners' experts that "it is likely that no amount of ABA services will

allow K.B. to placed in the same position he would have been in had the services been

provided." Ex. 2- Jan. 6, 2025 Final Order on Remand at p. 20. This position is contrary

to the position that Petitioners/Defendants advocated for both during the March/April

2022 IDEA Due Process Hearing and the December 2023/January 2025 Additional

Evidence Hearing before the District Court.

18.     During both of those evidentiary hearings, Petitioners/Defendants maintained that

*as compensatory education* K.B. required a placement a private school, Madonna

Learning Center ("Madonna"), where they opined he would be able to receive ABA

services in a natural learning environment from Madonna's on-staff BCBA, during

school.

19.     Only after the School District called the director of Madonna to testify under

subpoena during the evidentiary hearing on remand did Defendants/Petitioners, modify

their position to assert that K.B. should receive 3, 105 hours of outside ABA services as

compensatory education.

20.     Notably, the Director of Madonna admitted that Madonna does not employ a

BCBA and never has. Instead, Madonna's programing is nearly identical to the School

District, except Madonna has no ABA services overseen by a BCBA.

21.     The ALJ relied on Defendants/Petitioners general proclamations about children

with autism, virtually ignoring K.B.'s diagnosis of intellectual disability and non-

educational factors specific to K.B. such as being moving to in June 2020 during

COVID-19 to live with his father, whom he had not seen in person for several years prior

to relocating, and electing to attend school virtually for the 2020-2021 school year.

22.    The ALJ wrongfully adopted the Defendants/Petitioners' contention that K.B. can

make the same rate of progress as a student without significant Autism Spectrum

Disorder and Intellectual Disability and in doing so compared to K.B. to students without

these disabilities in issuing a compensatory education award.

23.     Regardless, these factual determinations and legal conclusions in support of the

current compensatory education award are based on the testimony of experts who are

seeking to maximize K.B.'s progress, a standard beyond what the IDEA requires.

24.    The ALJ incorrectly relied on Dr. Irby's testimony that "the trajectory of K.B.'s

learning was lower but similar to non-disabled peers when he was receiving 37.5 hours of

per week of ABA services at Innovations in Learning in Indiana" and based on this

testimony the ALJ determined that "while receiving ABA therapy services at Innovations

in Learning K.B. was on pace to eventually function on a level close to his non-disabled

peers." Ex. 2 Jan. 6, 2025 Final Order on Remand.

25.    Dr. Irby's opinion, however, is not supported by the Innovations in Learning data.

26.    The most recent Innovations in Learning data from October 2019 shows that at

the time that K.B. was aged 6 years and 11 months, he had yet to obtain the skills of

typically developing child aged 18-48 months, meaning that he was functioning

developmentally about 3-5 years behind a typically developing child.

27.    The IDEA does not require that a school district maximize a student's progress or

ensure that a student achieve a particular outcome.

28.    Additionally, she admitted that K.B. "would be able to catch up to his non-disabled peers in many areas," but " he would probably still need support through his life but would have likely been able to do many things independently." Remand T.R. Vol. I, p. 82-83.

29.    This testimony overlooks that K.B. can and did achieve scores comparable to non-disabled peers in many areas with IEP services and compensatory education that the School District has already provided to K.B.

30.    For these reasons and the others identified herein, the Court should reverse the January 6, 2025 Final Order on Remand as amended by the February 10, 2025 Final Order after Petition for Reconsideration.

## II.  Parties and Jurisdiction

31.    The School District is a local educational agency (LEA) located within the geographical boundaries of Shelby County, Tennessee.

32.    Mr. K.B. is the father of the minor who is the subject of this case, K.B.

33.    Mr. K.B. resides in Shelby County, Tennessee.

34.    K.B., a minor, resides with his father.

35.    Defendants/Petitioners originally brought their Complaint seeking judicial review of the outcome of the May 17, 2022 Final Order in an IDEA Due Process Hearing Complaint in Mr. K.B.'s individual capacity and in a representative capacity on behalf of K.B. Accordingly, the School District is filing this Complaint for Judicial Review against Mr. K.B. individually and on behalf of his minor child, K.B.  *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02464, D.E 1, PageID 3.

36.    This Court has subject matter jurisdiction over this case in accordance with 20 U.S.C. §1415(i)(A)(2), which confers federal question subject matter jurisdiction over complaints seeking judicial review of IDEA due process cases without regard to the amount in controversy.

37.    This Court's subject matter jurisdiction further arises from the jurisdiction conferred by way of the District Court's non-final order remanding *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, for determination by the Tennessee ALJ. *See K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, PageID 6016-6019.

38.    Venue is proper in the Western District of Tennessee because the underlying actions/occurrences giving rise to this complaint took place in Shelby County, Tennessee.

39.    This matter is timely filed because the Western District of Tennessee retained jurisdiction over ALJ's decision on remand.

40.    Alternatively, this matter is filed within 60 days of the date of the ALJ's February 10, 2025 Final Order after P[etition] F[or] R[econsideration]. Ex. 1.

**III.    Background Facts**

41.    K.B. is currently a sixth-grade student attending a Memphis-Shelby County Schools middle school.

42.    He is approximately 12 years, 5 months old.

43.    K.B. qualifies under the IDEA as a student with a special education disability.

44.    K.B. is eligible for IDEA special education services and supports in the eligibility categories of Autism Spectrum Disorder (ASD) and Intellectual Disability (ID).

45.     K.B. was also diagnosed as having an Independent Educational Expert (IEE), a

school psychologist, Dr. Sarah Irby, as has having Attention Deficit Hyperactivity

Disorder in January 2022.

46.     K.B.'s special education services and supports as of April 1, 2025 include special

education instruction in a functional skills classroom setting, general education for an

elective class, currently physical education (P.E.), access to his least restrictive

environment in the form of attending lunch and similar extra-curricular activities with

general education students, ABA therapy services in the form of ABA sessions (a.k.a.

Social/Emotional support), assistive technology to support communication, speech-

language therapy, one-on-one RBT services throughout the school day, and door-to-door

special transportation services.

47.     Previously, pursuant to a May 17, 2022 Final Order of an ALJ, K.B. received at

least 180, 30-minute sessions of ABA services provided by an RBT, supervised not less

than 5% of the time by a BCBA.

48.     K.B. has been consecutively enrolled in, and attending a Memphis-Shelby County

Schools operated, public school since October 2020.

49.     K.B. relocated to Memphis, Shelby County, Tennessee area on or about May

2020, during the earlier stages of the COVID-19 pandemic.

50.     He was approximately 7 years, 6 months old when relocated to Memphis,

Tennessee.

51.     Until that point, K.B. had been living with his mother in Indiana, but was

removed from her custody and relocated with two siblings to the Memphis-Shelby

County, Tennessee area to live with his father, Mr. K.B., and his partner, Ms. E.G.

52.    Prior to relocating to Memphis, Shelby County, Tennessee, K.B. had not been in enrolled in or attended a public or private primary educational institution.

53.    Instead, he attended a full-time ABA therapy clinic, Innovations in Learning, from August 2018-March 2020, during which time he received intensive ABA therapy.

54.    According to his Innovations in Learning records, K.B. was referred for ABA therapy by his mother.

55.    There is no indication in K.B.'s out of state records that an Individual Education Plan (IEP) team placed K.B. at Innovations in Learning or that a physician prescribed intensive ABA therapy for K.B.

56.    K.B.'s Innovation in Learning records show that he was anticipated to discontinue intensive ABA therapy in August 2020 and transition to less restrictive environment.

57.    His supervising ABA therapist was scheduled to meet with his mother in January 2020 to determine appropriate placement and ensure that his parent requested an IEP and BIP, but there is no evidence in the record as to whether this occurred.

58.    K.B. enrolled in a Memphis-Shelby County Schools middle school in October 2020, during which time the School District was fully virtual.

59.    K.B. did not receive special education services from October 2020 until August 2021.

60.    His Individual Education Plan was amended on October 18, 2021.

**IV.    Procedural History**

**A.    <u>Original (March/April 2022) IDEA Due Process Hearing</u>**

61.    Defendant/Petitioners filed an IDEA Due Process Complaint with the Tennessee Department of Education, Special Education Division, on or about October 6, 2021.

62.     Pursuant to Tennessee statute and regulation, Tenn. Code Ann. § 49-10-606(a);

Tenn. Comp. R. & Reg. 0520-01-09-.18, this IDEA Due Process Complaint was tried

before a Tennessee Administrative Law Judge (ALJ) for Tennessee Secretary of State's

Administrative Procedures Division, who served as the independent hearing officer for

the original due process hearing.

63.     The hearing took place over a three-day period on March 22-23, 2022 and April 8,

2022, and on May 17, 2022, the ALJ issued a Final Order. *K.B. v. Memphis-Shelby*

*County Schools*, No. 2:22-cv-02462, D.E. 14-17, PageID 3105-3167.

64.     The ALJ's May 17, 2022 Final Order found that MSCS had unreasonably failed

to identify K.B. as an IDEA eligible student during from October 2021-October 2022

which resulted in a substantive violation of the IDEA because K.B. did not receive a free

appropriate public education as required by the IDEA. *K.B. v. Memphis-Shelby County*

*Schools*, No. 2:22-cv-02462, D.E. 14-17, PageID 3105-3167.

65.     For the time period from October 18, 2022 to the date of the hearing, the ALJ

determined that the School District has provided K.B. with a free appropriate pubic

education.

66.     The ALJ found in favor of the School District on other matters before it. *K.B. v.*

*Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 14-17, PageID 3105-3167.

67.     For compensatory education, the ALJ also found that Mr. K.B. did not present

evidence or testimony supporting their proposed compensatory education plan, a

prospective, publicly-funded, private placement at Madonna Learning Center. *K.B. v.*

*Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 14-17, PageID 3105-3167.

68.    Likewise, Mr. K.B. did not present expert witnesses or otherwise elicit proof on a compensatory education services award in the form of speech-language therapy, occupational therapy, or physical therapy. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 14-17, PageID 3105-3167

69.    The ALJ also found that Mr. K.B. was not entitled to receive compensatory education in the form of a car. *Id.*

70.    Based on these determinations, the ALJ adopted the School District's proposed compensatory education plan. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 14-17, PageID 3105-3167.

71.    MSCS began delivering the compensatory education the ALJ ordered in May 2022 by having Ms. Wyatt, a certified special education teacher and BCBA serve as K.B.'s RBT until an RBT could be hired and trained to support K.B.

**B.**    **Complaint for Judicial Review of ALJ May 17, 2022 Order**

72.    Mr. K.B., for himself individually and on behalf of his minor child, filed an appeal of the May 17, 2022 Final Order, seeking judicial review before this Court. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 1.

73.    The School District answered Mr. K.B.'s Complaint, but it did not file a counter-claim seeking judicial review of the May 17, 2022 Final Order. No. 2:22-cv-02462, D.E. 9.

74.    Both Parties filed Motions for Judgment on the Pleadings and supporting memorandums. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462. D.E. 40-41, 50-52.

75.     During the course of litigating the appeal for judicial review, Mr. K.B. also sought to supplement the administrative record with additional evidence and to hold an evidentiary hearing. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 36.

76.     The District Court granted this motion in part and denied it in part. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 56.

77.     Accordingly, the District Court conducted an evidentiary hearing on December 18-19, 2023 and January 8, 2024 (sometimes referred to as "Additional Evidence Hearing"). *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 89, 90, & 97.

78.     After accepting post-hearing briefing from the Parties, the District Court issued a Judgment on the Administrative Record on the parties' motions for judgment on the pleadings. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462. D.E. 104.

79.      The Judgment on the Administrative Record granted in part and denied in part Mr. K.B.'s Motion for Judgment on the Administrative Record. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 104. It also granted in part and denied in part the School District's Motion for Judgment on the Administrative Record.

80.     The District Court's Judgment on the Administrative Record included a remand to determine an appropriate compensatory education award in light of the District Court's Judgment on the Administrative Record in which the District Court determined that the ALJ applied an incorrect legal standard to decide whether the School District provided K.B. a free appropriate public education (FAPE) from the period of October 18, 2021-

May 17, 2022. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 104,
PageID 5612-5615.

81.     The District Court's remand order specified that the remand should include "a
determination on whether the private educational placement would be an appropriate
compensatory award or would itself provide a FAPE, given MSCS' two-school year
failure to provide K.B. with a FAPE." *K.B. v. Memphis-Shelby County Schools*, No. 2:22-
cv-02462, D.E. 104, PageID 5616.

82.     The District Court also ordered that on remand the Tennessee ALJ determine an
appropriate award for compensatory education in light of the District Court's Judgment
on the Administrative Record to determine "whether private educational placement
would be an appropriate compensatory award or would itself provide a FAPE [free
appropriate public education]" because "the record before the Court raises questions as to
whether the unilateral placement at Madonna Learning Center ("MLC"), the private
school of K.B.'s choice, would be proper, given the disputes over whether they currently
employ a BCBA or RBT, and [Mr. K.B.'s] contention that provision of a FAPE for K.B.
would require the employment of a dedicated RBT supervised by a BCBA." *K.B. v.
Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 104, PageID 5615-5616.

83.     The District Court subsequently entered a Judgment. *K.B. v. Memphis-Shelby
County Schools*, No. 2:22-cv-02462, D.E. 106.

**<u>Appeal to the Sixth Circuit Court of Appeals</u>**

84.     The School District filed an appeal of the Judgment on the Administrative Record
and Judgment. *K.B. v. Memphis-Shelby County Schools,* No. 2:22-cv-02462, D.E. 107.

85.     Before the Sixth Circuit Court of Appeals, Mr. K.B. filed a motion to dismiss the appeal on grounds that the District Court's Judgment on the Administrative Record and Judgment were not final, and the School District filed a response. *K.B. et al. v. Memphis-Shelby County Schools*, Case No. 24-5345, D.E. 13, 17.

86.     In the meantime, Mr. K.B. filed a Motion for Attorneys' Fees, which the Parties briefed. *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02462, D.E. 109-122.

87.     The Sixth Circuit Court of Appeals granted Mr. K.B.'s motion to dismiss on grounds that District Court's Judgment on the Administrative Record was not final. *K.B. et al. v. Memphis-Shelby County Schools*, Case No. 24-5345, D.E. 13, 17.

88.     The Court of Appeals held that "[o]rdinarily an order remanding for further administrative proceedings is not a final order which is immediately appealable." *Schuck v. Frank*, 27 F.3d 194, 196 (6th Cir. 1994).

89.     It also rejected the School District's arguments that the "remand is tantamount to a finding that Mr. K.B. did not meet his burden of proof" and that the "practical finality" exception to the finality rule should apply because the remand was a third opportunity for Plaintiffs to meet their burden of proof. *K.B. et al. v. Memphis-Shelby County Schools*, Case No. 24-5345, D.E. 20-2, Page 3, 4.

90.     The Sixth Circuit Court of Appeals reasoned that the remand was appropriate for three reasons: (1) because a March 2022 IEP was only two months old at the time of the ALJ's May 17, 2022 final order, (2) because there was no occasion to address whether K.B.'s new school could provide the missing services at MSCS, and (3) because the insufficient record was an artifact of the ALJ's erroneous analysis, not the failure of Mr.

K.B. to carry the burden of proof. *K.B. et al. v. Memphis-Shelby County Schools*, Case No. 24-5345, D.E. 20-2, p. 3, 4.

91.     The School District respectfully asserts that the Sixth Circuit Court of Appeals' reasoning is based on an incorrect understanding of the underlying facts.

92.     The March 2022 IEP was draft for an IEP meeting that Mr. K.B.'s attorney declined to attend. *K.B. et al. v. Memphis-Shelby County Schools*, Case No. 24-5345, D.E. 112, PageID 5829.

93.     The District Court's Judgment on the Pleadings remanded the case for determination about whether the March 2022 draft IEP was properly before the ALJ during the original due process hearing. *K.B. v. MSCS*, No. 2:22-cv-02464, D.E. 104, PageID 5614-15.

94.     K.B. had not been enrolled in or attended Madonna or any other new school. *See K.B. v. Memphis-Shelby County Schools,* No. 2:22-cv-02464, D.E. 104, PageID 5615-5616.

95.     One purpose of the District Court's remand was to determine whether the compensatory education that Mr. K.B. was seeking, future enrollment in Madonna through the school year of his 22nd birthday, would be appropriate compensatory education for the District Court's determination that K.B. did not receive a FAPE for the 2020-2021 school year and the 2021-2022 school year under the October 18, 2022 IEP because after the March/April 2022 Due Process Hearing and the Additional Evidence Hearing there was an on-going dispute as to whether "unilateral placement in Madonna Learning Center ("MLC"), the private school of K.B.'s choice, would be proper given disputes over whether they currently employ a BCBA or RBT, and Plaintiff's contention

that provision of a FAPE would require the employment of a dedicated RBT supervised

by a BCBA." *K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02464, D.E. 104,

PageID 5615-5616.

96.    These issues were before the ALJ both during the May/April 2022 original due

process hearing and before the District Court during the additional evidence hearing. *See*

*e.g., K.B. v. Memphis-Shelby County Schools*, No. 2:22-cv-02464, D.E. 14-7, PageID

962-980.

97.    As the ALJ explained in his May 17, 2022 Final Order that he directed Petitioners

[Mr. K.B. for K.B.] to put on proof during the days scheduled for the hearing, originally

March 22-23, 2022 and extended to April 8, 2022, sufficient to support an award of

compensatory education, but "[t]hey simply did not do so," despite having access to Dr.

Irby, who is well qualified to provide an expert opinion on compensatory education. *K.B.*

*v. MSCS,* No. 2:22-cv-02464, D.E. 14-16, PageID 3553.

## C.    **Remand to the ALJ**

98.    Following the dismissal of the School District's appeal to the Sixth Circuit, the

ALJ determined that the remand order required consideration of the following issues:

> (1)    Were the Petitioners' [Mr. K.B.'s] claims for the period of March
> 14, 2022 through May 17, 2022 allowable under 20 U.S.C. §1415(f)(3)(B)?
>
> a.    If so, whether the October 2021 or March 2022 individual education
> plan (IEP) governed from March 14, 2022 through May 17, 2022; and
>
> b.    If the March 2022 IEP governed, [n. 3 The District Court already
> determined that if the March 14, 2022 though May 17, 2022 are allowable,
> and the October 2021 IEP governed, the K.B. was denied a FAEP for March
> 14, 2022, through May 17, 2022], whether K.B. was provided a free
> appropriate public education (FAPE) from March 14, 2022, through May
> 17, 2022.

  (2) Would a private placement (to be paid for by the Respondent) be an appropriate compensatory award for all FAPE violations found (versus compensatory services being provided by the Respondent); and if so, would that private placement provide a FAPE?

Ex. 2- Jan. 6, 2025 ALJ Final Order.

99. The ALJ heard proof related to these issues on December 3, 4, and 13, 2024.

100. The ALJ issued an order on January 6, 2025, that was styled as a final order ("January 6, 2025 Final Order"). Ex. 2, January 6, 2025 Final Order, p. 2.

101. The ALJ determined that "Petitioners' [Mr. K.B.'s] claims for the period of March 14, 2022 were not allowable under 20 U.S.C. § 1415(f)(3)(B), but alternatively, if they were, the October 18, 2021 IEP governed during that period, and, as already determined by the District Court, K.B. was denied a FAPE from March 14, 2022 through May 17, 2022." Ex. 2, January 6, 2025 Final Order, p. 2.

102. Although Petitioners [Mr. K.B.] argued as a part of their post-hearing briefing that the ALJ should find that the March 14, 2022- May 17, 2022 time period was before the ALJ and therefore, also the District Court, Petitioners [Mr. K.B.] admitted that "as a practical matter, the final outcome and award of compensatory education will not change whether this two month time period is considered…" Ex. 2. Jan. 6, 2025 Final Order, p. 5.

103. As for the issue of compensatory education, Petitioners [Mr. K.B.] did not seek private placement at Madonna or any other school in the Memphis-Shelby County area. Ex. 2, Jan. 6, 2025 Final Order, p. 2.

104. Rather, Petitioners abandoned their claim for compensatory education in the form of private placement and instead demanded "a monetized award of service in order for Petitioners to choose who, how, and when the compensatory services to which K.B. is

entitled are provided." Ex. 2, Jan. 6, 2025 Final Order (quoting Petitioners' December 26,

2025 posthearing brief, p. 49).

105.    The ALJ granted this award of compensatory education in the form of ABA

services to be paid for by the School District representing 2, 160 hours over two years,

representing year-round ABA therapy services tapered down yearly by 50% in years

three (540 hours), four (270 hours), and five (135 hours) for a total of 3,105 hours of

ABA. Ex. 2, Jan. 6, 2025 Final Order, p. 20. The ALJ determined that an RBT,

supervised by a BCBA, should provide these services. *Id.*

106.    Petitioners [Mr. K.B.] pivoted to a monetized award for compensatory ABA

therapy because Dr. Irby opined that K.B. "has progressed to a level higher than most or

not all of the students at Madonna, and he has 'skilled out' of many of the programs

specifically designed for children with autism. He has essentially outperformed that

placement and a majority or all other similar placements in the Memphis-Shelby County

area." Ex. 2,  Jan.  6, 2025 Final Order, p. 11.

107.    Another reason that Petitioners [Mr. K.B.] sought a monetized award of

compensatory ABA therapy is because Madonna does not have an RBT or BCBA on

staff, and the testimony from Madonna's Executive Director was that they have never

employed a BCBA or RBT. Ex. 2, Jan. 6, 2025 Final Order, p. 11.

108.    Petitioners [Mr. K.B.] did not present any proof of what these services would cost

during the third three-day hearing on this case. *See* Ex. 2, Jan. 6, 2025 Final Order, p. 22,

n. 5.

109.    As a result, the ALJ ordered the parties to confer about stipulated rates for RBT

and BCBA and to submit no more than three (3) affidavits of the costs for these services

and briefs in support on or before January 15, 2025. Ex. 2, January 6, 2025 Final Order.

110.    The ALJ received the Parties affidavits and briefs and issued an Order dated

January 27, 2025 that provided that the total monetized amount of ABA services to

$283,331.25. Ex. 3. January 27, 2025 Order.

111.    Additionally, on January 21, 2025, the School District filed a Petition for

Reconsideration and for Stay in accordance with Tennessee Rule of Civil Procedure 59,

pursuant to Tennessee Code Annotated section 4-5-317 (reconsideration) and Tennessee

Code Annotated section 4-5-316 (stay).

112.    On February 10, 2025 entered a revised final order styled as Final Order after

PFR. The ALJ granted the School District's Petition for Reconsideration in part and

denied it in part.

113.    The ALJ ordered that the costs of service can be submitted to the School District

for payment of services rendered to K.B. Ex. 3- February 10, 2025 Order.

**V.  Cause of Action**

114.    This is a Complaint for Judicial Review of a ALJ decision pursuant to 20 U.S.C.

1415(i)(2)(A).

115.    IDEA due process hearing decisions are subject to review in federal or state court.

*Id.*

116.    This action is timely filed because Federal District Court's remand order issued in

*K.B. v. Memphis-Shelby County Schools,* No. 2:22-cv-02464 JPM was not a final order.

117.    Likewise, the resulting order on remand, January 6, 2025[1] as revised by the February 10, 2025 Final Order after PFR, was non-final because the Federal District Court retained jurisdiction over the remand.

118.    Alternatively, the decision of the ALJ was revised on February 10, 2025 pursuant to the School District's petition for reconsideration, which was granted in part, and therefore extended the time for seeking judicial review to April 11, 2025. Ex. 3- *Notice of Appeal Procedures.*

119.    A district court reviewing the decision of an ALJ pursuant to 20 U.S.C. § 1415(i)(2)(A) reviews the determination of the ALJ *de novo*, except that when the ALJ utilizes educational expertise to made determinations, a district court reviews those decisions *de novo* with substantial deference for the ALJ's educational expertise.

120.    Applying the required legal standard, the District Court should overturn the determination of the ALJ that the fact that K.B. has made progress does not show that he made the same progress that he would have made but for the lack of services he experienced during the 2020-2021 school year and in light of the denial of FAPE that the District Court found K.B. to have experienced in the 2021-2022 school year.

121.    Evidence of K.B.'s abilities and progress in the years before and after the IDEA violation is relevant to determining whether he suffered a loss in the 2020-2021 and 2021-2022 school years. *Somberg on behalf of Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 175 (6th Cir. 2018).

---

[1] Under both Tennessee and federal common law, a final order is one that resolves all issues between the parties. The ALJ's January 6, 2025 Final Order did not resolve the issue of the amount of compensatory damages or how they would be paid. It required the Parties to submit additional proof by way of affidavit.

122.    Without such information a court cannot assess whether and how much K.B. progressed, stalled or regressed because of the School District's IDEA violations.

123.    The ALJ did not take into account K.B.'s progress from March 17, 2022 to determine the compensatory education award.

124.    Dr. Irby opined that K.B.'s "rate of improvement" at Innovations in Learning over the period of time from November 2018 to October 2019 was 57%, according to his VB-MAPP scores.

125.    She reached this conclusion by calculating the point difference between the October 2018 administration of the VB-MAPP from November 2019 (54.5 points/170 total points) and (85.5 points/170 total points), of 31 total points and dividing the point differential over the first score (54.5 points).

126.    Dr. Irby opined that this calculation showed that K.B.'s rate of improvement (also known as rate of progress) from October 2018 to November 2019, approximately one year, was 57%.

127.    The ALJ relied on this calculation to determine K.B.'s rate of progress during the time he was receiving clinic-based ABA therapy services during this time period and to project that he should have made the same rate of progress during this time frame for the future, had he received comparable ABA services from October 2020 to May 17, 2022.

128.    The ALJ erroneously determined that K.B. was a flatter, lesser trajectory from learning skills based of 57% while at Innovations in Learning in October 2019 to April 2023 with Memphis-Shelby County Schools.

129.    This determination did not take into account the increased skill difficulty and the natural reduction in brain plasticity as K.B. aged.

130.    The ALJ also incorrectly credited the Defendant/Petitioners' position that K.B. would never allegedly recoup the benefit of his missed educational services, but he disregarded the Defendant/Petitioner's admission that their estimation of the educational progress he would have made had he received special education supports and services during the relevant time frame were speculative and not based on a reasonable degree of certainty for a school psychologist.

131.    Dr. Irby admitted that there are various factors impacting a student's rate of improvement and that student's do not necessarily continue at the same rate of improvement year over year.

132.    The ALJ did not sufficiently consider the testimony of K.B.'s school-based BCBA and licensed, certified special education teacher, Ms. Wyatt.

133.    The ALJ did not sufficiently consider the testimony of K.B.'s licensed, certified special education teacher, Ms. Waldron.

134.    Defendant/Petitioners' expert admitted that she could not opine to a reasonable degree of psychological certainty that K.B. would continue to achieve the same rate of progress, even if he had continued receiving ABA services during the 2020-2021 school year.

135.    She admitted that her testimony was speculative.

136.    Defendant/Petitioenrs' expert assumed, without a basis, that because K.B.'s progress allegedly improved by 57% from November 2018 to October 2019, as measured by the VBMAPP (skills for children 12-48 months), while he receiving ABA services in a clinic setting, that he would continue to make the same rate of progress as the skills taught increased in difficulty.

23

137.    Defendant/Petitioners' expert opinion is based on two incorrect assumptions.

138.    Defendant/Petitioners' expert assumes that a student will make the same rate of progress on skill acquisition as the skills increasingly become more difficult.

139.    Even if this were true, which the School District disputes, the ALJ erroneously disregarded the progress that K.B. made post-May 2022.

140.    Also, Defendant/Petitioners' expert opinion is based on the proposition that a child's brain becomes less plastic over time and this means it takes longer to learn new skills.

141.    Yet, Defendant/Petitioners' expert opinion is that K.B.'s rate of progress, alleged to be 57% will continue year-over-year, regardless of his increasing age and whether the difficulty of the skills presented increased.

142.    A child's brain becomes less plastic over time, whether or not a child is receiving ABA therapy services.

143.    A child's peek time for neuroplasticity is from birth to age five.

144.    K.B was not residing in Shelby County from birth to age five, and there is no evidence in the record that K.B. received ABA services during this time while residing in Indiana.

145.    K.B. did not begin receiving ABA services until August 2018, in Indiana, through Innovations in Learning, when he was 6 years, 7 months old.

146.     His ABA provider planned to discontinue his intensive ABA services in August 2020, when he would have been 8 years, 7 months old, three months before he enrolled in Memphis-Shelby County Schools.

147.    The ALJ did not give sufficient consideration to these factors, including K.B.'s progress during the time since he began receiving ABA services in May 2022 through Memphis-Shelby County Schools.

148.    He did in fact make progress appropriate for his individual circumstances during the time period from October 18, 2021 to May 17, 2022, which is the standard for determining whether K.B. was denied a FAPE having for two lunch periods and/or not receiving ABA services during this time.

149.    Additionally, K.B.'s overall progress, post- May 17, 2022 was relevant to and should have been considered in relationship to the ALJ's February 10, 2024 Final Order on compensatory education.

150.    The ALJ erroneously disregarded K.B.'s post-May 17, 2022 progress as a basis for determining an appropriate compensatory education plan.

151.    K.B.'s post-May 17, 2022 progress is, in part, attributable to the ALJ's May 17, 2022 compensatory education award, which the School District fulfilled.

152.    Disregarding the success of these compensatory services as well as the School District's provision of on-going services and supports to provide K.B. as FAPE under his post-May 17, 2022 IEPs is error. *Somberg v. Utica Cmmty. Schs.*, 908 F.3d 162, 175 (6th Cir. 2018).

153.    The ALJ also erred in accepting the Defendant/Petitioners' expert opinion that based on K.B.'s trajectory at Innovations in Learning it is likely that K.B. would have been able to "catch up" to non-disabled peers in many areas.

154.     First, this opinion ignores that K.B. did not receive ABA services during early childhood, through age 5, when ABA therapy is most effective, and Dr. Irby's flawed assumptions related to K.B.'s rate of improvement.

155.     Second, it ignores that school districts are not charged with maximizing a student's educational progress by providing services designed to ensure that K.B., a student with ASD and ID, "catch up" to his intellectually disabled peers.

156.     An award of compensatory education is designed to provide the student with the benefit of the services and supports that they would have received had a school district provided a FAPE during the relevant time period. *Somberg*, 908 F.3d at 176 (explaining a compensatory education award should be flexibility calculated "in terms of placing the student in the same position that he or she would have occupied but for the school district's IDEA violations.").

157.     The ALJ's award of compensatory education is based on the services and supports that Defendants/Petitioners assert the school district should have provided to "catch up" K.B. to non-disabled peers in some areas, but this is beyond the standard that the School District was obligated to provide K.B. in the first place.

158.     Comparing the most recent data from Innovations in Learning (VBMAPP results from October 2019) with the base-line data from the School District (ABLLS-R from May 2022) shows that K.B. did maintain and make gains in some areas, before he received school-based ABA interventions and compensatory education.

159.     For instance, on the May 2022 ABBLS-R in the categories of Cooperation & Reinforcer Effectiveness, Group Instruction, and Spontaneous Vocalization, K.B. accomplished all skills in each of these categories except one.

160.    On the Innovations in Learning VB-MAPP October 2019 results, K.B. had only

achieved complete success in the category of group instruction.

161.    His next highest level of completion on the Innovations in Learning VB-MAPP

results were in the category of play where he scored a 12.5 out of 13.

162.    In comparison, on the May 2022 ABBLS-R data he had also completed 9 of 10

skills in writing, 14.5 of 15 skills in dressing, 9 of 10 skills in eating, 9 of 9 skills in

toileting, 26 of 30 skills in gross motor, 27 of 28 skills in fine motor, and 18.5 of 19 skills

in spontaneous vocalizations, none of which are directly measured on the VB-MAPP.

163.    K.B also acquired skills in the academic aeras of reading, math and spelling,

according to the May 2022 ABBLS-R results. K.B. had not acquired on the October 2019

VB-MAPP.

164.    Of these three areas, on the VB-MAPP K.B had only accomplished listening to

three-minute story for 75% of the time.

165.    K.B.'s May 2022 ABLLS-R results show that K.B. continued to have deficits in

the areas of visual performance, 13.25 of 27.

166.    Compared to the October 2019 VB-MAPP results, K.B. achieved 11 of 15 skills

for visual performance match to sample, but these skills were not as complex as the skills

measured or achieved on the ABLLS-R.

167.    For receptive language, on May 2022 ABLLS-R K.B. scored a 47.75 of 57 or

83% of the total points.

168.    Compared to the area of listening on the VB-MAPP from October 2019, K.B.

scored an 11 of 15 points or 73% of total points in the area of listening.

169.    In the area of labeling, K.B. scored 15 of 47 possible points on the ABLLS-R or 31% of total possible points, as of May 2022, on a test designed to measure skills in the range of typically developing 6-7 year olds.

170.    In the similar area of tacting on the VB-MAPP as of October 2019, K.B. scored 8 of 15 possible points, but he only increased from a score of 7 to 8 from November 2018 to October 2019 with one year of full-time ABA clinic based therapy. His highest score in tacting (i.e. labeling) was in the skill range of 18-36 year olds.

171.    Based on the data, K.B. suffered little to no deficit from October 2019 to May 2022, when the School District took K.B.'s baseline ABLLS-R data.

172.    Additionally, K.B.'s April 2024 academic present levels of performance also show that he had improved from preschool to second grade level in the area of adaptive skills, from beginning learning level skills to kindergarten skills in the area of cognitive skills, from kindergarten to third grade reading in English language arts, from beginning learning to second grade level in Math, and from beginning learning to preschool level in the area of social emotional skills.

173.    K.B.'s progress with the previously ordered compensatory education and ongoing provision of FAPE should have been considered to as party of the compensatory education award.

174.    The ALJ's failure to consider K.B.'s progress as a result of both his already delivered May 17, 2022 compensatory education award, and the ongoing FAPE he is receiving through the School District, is also inconsistent with Defendants/Petitioners admitted that K.B. had "skilled out" of the educational services provided at Madonna.

175.    During the Remand Hearing, Dr. Irby offered no explanation for her position that K.B. would not be able to receive an appropriate education at Memphis-Shelby County Schools, but that he had now "skilled out" of the educational services provided at Madonna.

176.    She also could not explain why she'd previously opined that K.B. required prospective private placement at Madonna as compensatory education in December 2023/January 2024 during the additional evidence hearing, but since K.B. had "skilled out" of Madonna for compensatory education as of December 2024, he required more compensatory education in the form of 3, 105 hours of ABA therapy services, in addition the compensatory education he had already been awarded and received and his on-going ABA services provided by the School District.

177.    The ALJ also erred in failing to consider the consequences of Defendants/Petitioners' insistence that K.B.'s compensatory education include a private placement that included a school with a BCBA and RBT on staff, when no such private placement in the Memphis, Shelby County area exists.

178.    Defendants/Petitioners failed to prove that Madonna offers the educational programing that they have insisted K.B. receive as compensatory education: ABA services supervised by a BCBA and provided by an RBT or BCBA.

179.    The proof presented by the School District, before the ALJ during the remand hearing, showed that Madonna did not employ a BCBA or an RBT, and that Madonna had never had a BCBA on staff, despite Dr. Irby's insistence otherwise.

180.    Prospective private placement had been the primary form of compensatory education that Defendants/Petitioenrs sought since the March/April 2022 due process hearing.

181.    During the March/April 2022 original Due Process Hearing, Defendants/Petitioenrs failed to specify Madonna by name, and only submitted Dr. Irby's testimony that K.B. should have a private placement as compensatory education that included a school with a BCBA on staff to deliver services in a classroom setting.

182.    During the December 2023/January 2024 Additional Evidence Hearing before the District Court, Petitioners insisted that Madonna would be an appropriate placement for K.B. to receive his compensatory education because Madonna had an on-staff BCBA to support K.B. in the educational setting.

183.    The District Court determined that there was insufficient evidence in both the administrative record and the additional evidence record to support that a prospective private placement at Madonna as compensatory education or to provide a FAPE.

184.    Defendants/Petitioners ongoing failure to present proof on the issue of prospective private placement as compensatory education resulted in a delay in K.B. receiving the any compensatory award beyond the May 17, 2022 compensatory award.

185.    There was no reason that Dr. Irby could not have opined that K.B. should have received the compensatory award that she ultimately recommended for K.B. during the December 2024 remand hearing during the March/April 2022 original due process hearing.

186.    The compensatory award of 3, 105 hours is based on what Dr. Irby recommends children with autism receive for ABA therapy: 25-40 hours per week, which are then typically tapered down for the remaining three years for school aged children.

187.    Dr. Irby's standard recommendations for all students with autism, not unique to K.B., served the basis for the compensatory education award issued following the December 2024 Remand Hearing.

188.    K.B. received 37.5 hours per week from Innovations of Learning in the clinic setting, from August 2018 to March 2020, for an 18-month period.

189.    He enrolled in the School District in October 2020, and the School District began providing K.B. ABA services as compensatory education and as part of FAPE, pursuant to Dr. Irby's January 2022 Independent Educational Evaluation recommendations, in May 2022.

190.    Dr. Irby could have provided the same testimony and reasoning to support K.B.'s compensatory education award during the March/April 2022 original due process hearing, but she simply did not. *Deal v. Hamilton Co. Bd. of Educ.*, 392 F.3d at 851, n. 8 (citations omitted).

191.    The ALJ erred by accepting what is essentially a standard recommendation from Dr. Irby that could have been provided 2.5 years ago, but was not, as the basis for the compensatory education award.

192.    Furthermore, the ALJ erred by allowing Defendants/Petitioners to present proof of the costs of privately provided ABA services after the December 2024 Remand Hearing.

193.    Allowing Defendants/Petitioners a *fourth* opportunity to present evidence an appropriate compensatory education award was error because the basis Dr. Irby's opinion, her standard recommendations for students with autism, without regard to their individual needs or deficits, were available to Defendants/Petitioners during the March/April 2022 original due process hearing.

## PRAYER FOR RELIEF

Based on the forgoing, the School District seeks as relief:

1.    An Order permitting submission of additional evidence, by hearing or otherwise, in support of K.B.'s progress and on any other matter to the extent necessary to support the judicial review of the School District's challenge to ALJ's January 6, 2025 Final Order as amended by the February 10, 2025 Final Order after Petition for Reconsideration as it relates to the compensatory education award of ABA services;

2.    Judicial Review on the record as a whole, including any additional evidence submitted before the Court pursuant to this Complaint, in the form of a Motion for Judgment on the Administrative Record reversing the determinations of the ALJ's January 6, 2022 Final Order as amended by the February 10, 2025 Final Order after Petition for Reconsideration as it relates to the compensatory education award of ABA services, and reinstating the compensatory education award issued in favor of K.B. on March 17, 2022.

3.    An opportunity to amend or supplement the Complaint for Judicial Review as permitted by Federal Rules of Civil Procedure and the Orders of this Court.

4.    Any other such relief that the School District is entitled obtain, including but not limited costs, expenses, and attorneys' fees.

Dated: April 11, 2025                    Respectfully Submitted,

s/ Laura Ann E. Bailey
LAURA ANN E. BAILEY (TN BPR #027078)
Shelby County Board of Education Office
of General Counsel
160 S. Hollywood St., Room 218
901.416.6372 (direct phone)
901.416.6370 (main phone)
901.416.6374 (fax)
baileyla@scsk12.org
*Attorney for Memphis-Shelby County Schools*