## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

**MEMPHIS SHELBY COUNTY SCHOOLS,**

      Plaintiff.

v.                                                        No.:  2:25-cv-02406-TLP-atc

**K.B., by and through his Parent, K.B.,**

      Defendant.

---

### DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c) AND, IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

K.B., by and through his parent, (collectively, K.B. and/or Defendant) respectfully submits this Memorandum in Support of Defendant's Motion to Dismiss on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) and, in the Alternative, Motion for Judgment on the Administrative Record. This motion addresses Memphis-Shelby County Schools' (MSCS) challenge to the Administrative Law Judge's (ALJ) Final Order on Remand issued on January 6, 2025, which awarded K.B. compensatory education consisting of 3,105 hours of Applied Behavior Analysis (ABA) services and 18 hours of speech-language pathology services. Defendant states as follows:

## I.       Introduction

This case presents two critical issues. First, MSCS's complaint is jurisdictionally defective because it was filed on April 12, 2025, which is ninety-five (95)[1] days after the ALJ's January 6, 2025 Final Order on Remand. *See attached* Ex. A. That exceeds the ninety-day deadline

---

[1] The 90th day was Sunday, April 6, 2025. While April 12 is 96 days after January 6, the deadline to file was Monday, April 7, 2025.

established by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*., (IDEA).

20 U.S.C. § 1415(i)(2)(B). In light of this Court's February 23, 2026 Order (ECF 33) which held

that the IDEA, and not Tennessee law[2] governs makes more clear that the clock started on January

6 and not February 10 as will be discussed below. This jurisdictional deadline is not subject to

waiver, equitable tolling, or extension through unauthorized state administrative procedures.

MSCS's strategic decision to pursue a reconsideration motion rather than file a timely federal

complaint cannot cure this jurisdictional defect. The Court lacks subject-matter jurisdiction over

MSCS's untimely complaint and must dismiss the action.

Second, should the Court decline to dismiss on jurisdictional grounds, the comprehensive

administrative record overwhelmingly supports the ALJ's compensatory education award. Most

of the facts were undisputed in K.B.'s original federal civil action, Case No. 2:22-cv-02464

(K.B.I). The ALJ's January 6, 2025 compensatory award is supported by substantial evidence,

including convergent expert testimony from three highly qualified professionals, objective

comparative progress data demonstrating quantifiable educational loss, comprehensive assessment

data documenting persistent educational gaps, and evidence of MSCS's capacity constraints. The

award fully comports with Sixth Circuit standards, employing a flexible, qualitative approach

tailored to K.B.'s individual needs, remedial rather than punitive in nature, and reflecting sound

educational judgment through its carefully structured tapering schedule.

K.B. suffered a substantial denial of a free appropriate public education (FAPE) as required

by the IDEA during the 2020-2021 school year when MSCS failed to provide any special education

or related services whatsoever, and in the 2021-2022 school year when MSCS failed to provide

adequate services. Prior to enrolling in MSCS and while living in Indiana, K.B. received 37.5

---

[2] Tennessee Code Annotated section 4-5-322.

hours per week of intensive ABA services because of the severity of his disabilities and needs, and he made substantial progress. After MSCS denied K.B. a FAPE during a critical developmental window, K.B.'s rate of improvement significantly declined. This quantifiable decline in progress, combined with persistent educational gaps showed K.B. reading at approximately kindergarten level when in the sixth grade and demonstrates the magnitude of educational harm K.B. has suffered. K.B. will never fully recoup the losses he suffered as a result of MSCS's failure to provide him with a FAPE.

The ALJ's compensatory education award is carefully calibrated to remedy this harm. The award of 3,105 hours of ABA therapy services is supported by expert testimony from Dr. Sarah Irby, Ph.D., BCBA; Geoffrey Ferris, BCBA; and Dr. Eric V. Larsson, PhD, LP, BCBA-D. The compensatory education fund mechanism is appropriate given MSCS's severe staffing constraints, the lengthy and contentious nature of this litigation, and ensures K.B. will receive quality services from qualified providers.

For these reasons, K.B. respectfully requests that this Court (1) dismiss MSCS's complaint for lack of subject-matter jurisdiction due to untimely filing, or (2) in the alternative, enter judgment on the administrative record affirming the ALJ's January 6, 2025 Final Order on Remand as supported by substantial evidence and consistent with Sixth Circuit standards for compensatory education remedies under IDEA.

## II.    PROCEDURAL HISTORY

This case has a long and complicated procedural history, included here for reference. As the Sixth Circuit noted previously, "[c]ontrary to MSCS's assertion, the insufficient record is an artifact of the ALJ's analysis, not evidence of Mr. K.B.'s failure to carry his burden." *K.B. v. Memphis Shelby Cty.*, No. 24-5345, 2024 U.S. App. LEXIS 21201 at *3 (6th Cir. Aug. 21, 2024).

This matter has not been "made unnecessarily complex by K.B.'s failure to present evidence in support of a compensatory education award for the minor student at the heart of this case, K.B." Complaint in K.B.III (Case No. 2:25-cv-02406, ECF 1).[3] But the repeated delays and procedural complexities only harm one person: K.B., a child with autism and intellectual disability who has needed – and continues to need – education, interventions, and services that require early, consistent intervention (which he has been denied).

### A. Original Administrative Proceeding and First Federal Court Action (K.B.I)

On October 1, 2021, K.B. filed a due process complaint with the Tennessee Department of Education, Division of Special Education, challenging MSCS's failure to identify K.B. as a student with disabilities and failure to provide him with a free appropriate public education (FAPE) as required by the IDEA. An ALJ conducted a hearing on March 22-23, 2022, and April 8, 2022. On May 17, 2022, the ALJ issued a Final Order finding that MSCS failed to provide K.B. with a FAPE from October 5, 2020, through October 18, 2021, but concluding that MSCS had provided a FAPE thereafter. The ALJ awarded limited compensatory education services.

On July 18, 2022, Plaintiffs filed a Complaint in this Court (Case No. 2:22-cv-02464-TLP-cgc, referred to as K.B.I), appealing the ALJ's decision and seeking reversal of the portions of the order in which they were not the prevailing party, additional compensatory education, and attorneys' fees. Importantly, neither party challenged the ALJ's finding that Plaintiffs prevailed on their claims regarding the October 5, 2020-October 18, 2021 time period; i.e., Plaintiffs were

---

[3] Later in the opinion, the Sixth Circuit opined, "MSCS frames the district court's remand as a question of due process under the IDEA, wrongly entitling [K.B.] to another opportunity to meet their burden of proof. This overstates the significance of the remand, which is based on the uncommon procedural posture and unique facts of this case. And, in any event, as noted above, the lack of an adequately developed record is not attributable to [K.B], so the remand is a procedural efficiency, not an unjustified additional bite at the apple." *Id*. at 4.

already the undisputed prevailing party with respect to those claims once Defendant answered the

complaint. Plaintiffs' complaint also sought attorneys' fees and costs.

### B.  District Court Review and Remand (March-April 2024)

Both parties filed motions for judgment on the administrative record. On December 18-19,

2023, and January 8, 2024, the Court conducted a supplemental evidentiary hearing. On March 12,

2024, the Court issued a Judgment on the Administrative Record (ECF No. 104), reversing the

ALJ's finding that MSCS provided K.B. with a FAPE after October 18, 2021. The Court found

that the October 18, 2021 IEP was inadequate under the IDEA. However, because the record was

incomplete regarding whether the March 14, 2022 IEP was sufficient and whether MSCS had

adequate resources to provide necessary services, the Court remanded the case to the ALJ for

further proceedings on these issues. The Court issued a judgment remanding the case to the ALJ

on April 5, 2024 (ECF 106) and closed the case.

### C.  Motion for Fees (April 2024) and Motion for Clarification (September-November 2024)

Pursuant to and as required by Federal Rule of Civil Procedure 54, K.B. timely filed a

motion for attorneys' fees and costs on April 19, 2024 (ECF 109) to which MSCS responded. Five

months after the remand, K.B. filed a motion for clarification because the ALJ believed – and

MSCS took the position[4] – that the ALJ should consider the issue of attorneys' fees even though

---

[4] This position is inconsistent with all of MSCS's arguments and briefing to date. Nowhere in MSCS's response to K.B.'s motion for fees (ECF 117) did it argue that the Court had remanded the determination of attorneys' fees to the ALJ. Similarly, in MSCS's misplaced Petition to Stay Administrative Proceedings filed with the Tennessee Administrative Procedures Division on April 26, 2024, MSCS explicitly agreed that the IDEA mandates that only the federal district court can determine attorneys' fees and costs: "The March 12, 2024 Order also remands to the ALJ the 'determination of reasonable costs and attorney's fees.' [W.D. Tenn. ECF No. 104, PageID 5569]. This is clearly inconsistent with the IDEA, which provides only the District Court with authority to determine reasonable costs and attorneys' fees."

the IDEA explicitly gives the federal district jurisdiction to hear those. 20 U.S.C.
§ 1415(i)(3)(B)(i).

On November 5, 2024, this Court granted K.B.'s motion, clarified the federal district court
has exclusive authority to award attorneys' fees, and concluded: "After the conclusion of the
administrative proceedings, either party may file for a determination of attorneys' fees by the
Court." (ECF 127). That is exactly what K.B. did. On March 7, 2025, K.B. sought leave to file a
renewed motion for fees (ECF 128) which the Court granted on March 25, 2025 (ECF 130). K.B.
then filed their motion for fees on April 11, 2025 (ECF 131, 132), to which MSCS has responded
(ECF 135, 136) and K.B. has supplemented (ECF 137). This motion is still outstanding.

### D.  ALJ Proceedings on Remand (December 2024 - February 2025)

K.B. filed a notice of remand in the Tennessee Administrative Procedures Division on
March 21, 2024. However, MSCS continued to prolong and delay the litigation by erroneously
appealing the Court's March 12, 2024 order to the Sixth Circuit even though the order was not a
final, appealable order. K.B. filed a motion to dismiss that appeal on May 22, 2024. Without legal
authority to do so, over K.B.'s objections, and despite MSCS's failure to comply with the Federal
Rules of Appellate Procedure, MSCS then caused the ALJ to stay the case pending MSCS's
misplaced appeal in the Sixth Circuit. On August 21, 2024, the Sixth Circuit granted K.B.'s Motion
to Dismiss. *K.B. v. Memphis Shelby Cnty.*, No. 24-5345, 2024 U.S. App. LEXIS 21201 (6th Cir.
Aug. 21, 2024).

The ALJ eventually held a hearing on the remanded issues on December 3, 4, and 13, 2024,
and issued a Final Order on January 6, 2025. The ALJ's January 6, 2025 Final Order found:

> 1.      The Petitioners' claims for the period of March 14, 2022, through
> May 17, 2022, are not allowable under 20 U.S.C. § 1415(f)(3)(B).
> Alternatively, if these claims are allowable, the October 2021 IEP governed
> during that period (as stipulated by the parties (Remand T.R. Vol. IV, pp.

436-437), and, as already determined by the District Court, K.B. was denied a FAPE from March 14, 2022, through May 17, 2022.

2.      The Petitioners have shown that K.B. should receive 3,105 hours of compensatory ABA therapy services provided by an RBT supervised by a BCBA. These services shall be made available through a fund provided by MSCS, allowing parent K.B. to select from whom, how, what, and when compensatory services are provided.

3.      The Petitioners have shown that K.B. should receive 18 hours of compensatory speech/language therapy services to be provided by MSCS through a licensed speech-language pathologist while K.B. is at school. Page 24 of 254.

4.      The Petitioners have not shown that K.B. should receive compensatory OT services or transportation relief.

Notably, the ALJ also found that MSCS likely could not provide the awarded compensatory services ("Given MSCS's lack of resources, it is questionable whether they can provide compensatory ABA therapy services." January 6, 2025 ALJ Final Order at p. 21).

MSCS then filed a motion to stay in the Administrative Procedures Division on January 13, 2025, and a petition for reconsideration and a Motion to Stay on January 21, 2025. On January 27, 2025, the ALJ issued an order monetizing the compensatory education award at $283,331.25 (RBT services at $208,035.00 plus BCBA services at $75,296.25). *See attached* Ex. B. On February 10, 2025, the ALJ issued yet another order styled "Final Order" in which the ALJ granted in part MSCS's petition for reconsideration by clarifying that in lieu of the "compensatory education fund" provided by MSCS, K.B. could submit invoices from providers directly to MSCS for payment of compensatory services.

### E.  New Federal Court Actions (K.B.II and K.B.III)

K.B. contested the validity of the ALJ's February 10, 2025 order as a matter of law in a new civil action that he timely filed on March 8, 2025 (and amended on May 29, 2025). (Case No. 2:25-cv-02265, referred to as K.B.II). In K.B.II, he also challenged the procedural mechanism for

administering the compensatory education award and sought to have the funds placed in a special needs trust rather than paid through invoices and sought fees.

On April 12, 2025, MSCS filed the instant Complaint for Judicial Review (Case No. 2:25-cv-02406, referred to as K.B.III), challenging the ALJ's January 6, 2025 Final Order on Remand and the February 10, 2025 Final Order after Petition for Reconsideration. K.B. filed a motion to dismiss the complaint as untimely on May 21, 2025. MSCS then subsequently filed a motion to reopen K.B. I in May 2025 (which K.B. opposed), and filed a counter-complaint to K.B.II in June 2025 (to which K.B. also filed a motion to dismiss). On February 23, 2026, this Court granted K.B.'s motion to dismiss MSCS's counter-complaint in K.B.II, denied MSCS's motion to reopen K.B.I, and denied K.B.'s motion to dismiss K.B.III. (ECF 33).

## III.    LEGAL STANDARD

### A.  Rule 12(c) Motion Standard

Fed. R. Civ. P. 12(c) permits a motion for judgment on the pleadings after the pleadings are closed. The motion tests the sufficiency of the pleadings to state a claim upon which relief can be granted. The standard for evaluating a Rule 12(c) motion is identical to the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim. "For purposes of a motion for judgment on the pleadings, all well pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). To survive a Rule 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549 (*quoting JP Morgan Chase Bank, N.A.*, 510 F.3d at 582).

In reviewing a motion to dismiss or motion for judgment on the pleadings, the court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. The documents attached to the pleadings are considered a part of the pleadings and may therefore be "considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr. Inc., v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) ("In reviewing a motion to dismiss the Court 'may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.'" (*quoting Bassett v. NCAA*,   528 F.3d 426, 430 (6th Cir. 2008))); *see Clark v. Stone*, 998 F.3d 287, 296-297 (6th Cir. 2021).

## B.  IDEA Framework and Compensatory Education

The IDEA requires that states and local educational agencies provide a free appropriate public education (FAPE) to all children with disabilities. When a school district fails to provide a FAPE, compensatory education is an appropriate equitable remedy designed to place the student in the position he or she would have occupied but for the district's IDEA violation.

The difficulty of crafting an award of compensatory education for low-income children and families cannot be used as reason to not provide such awards. The very circumstances that make

them so difficult to determine are the same circumstances that make compensatory education so important for low-income children: "Children from families without financial resources are the most likely to require compensatory education, because their parents cannot afford private school tuition, tutoring, and other services if a district is not providing FAPE. Yet, it is often difficult for these parents to present sufficient evidence of the need for compensatory education, owing to some of the same difficulties discussed above in accessing independent experts and private providers who can testify at a hearing." Elisa Hyman, Dean Hill Rivkin & Stephen A. Rosenbaum, *How Idea Fails Families Without Means: Causes & Corr. from the Frontlines of Special Educ. Lawyering*, 20 Am. U.J. Gender Soc. Pol'y & L. 107, 129 (2011). As a result of the above-described difficulties faced by low-income families, it is no surprise that all of the relevant caselaw that undersigned counsel was able to find in researching the area of compensatory education involved cases in which parents were seeking reimbursement of private placements at public expense. Were Mr. Bardwell able to afford private placement, he would have done so.

A Supreme Court case rejecting a school district's argument that a student was not entitled to reimbursement for private placement because the child had not previously attended a public school is on point here. As in that case, MSCS argued in K.B.I that K.B. is not entitled to compensatory education without precise measurement of his educational deficit. That is a perverse and unjust twisting of the IDEA and its progeny caselaw when MSCS created the more than two-year gap in assessment date through its failure to provide K.B. a FAPE. As the Supreme Court stated:

> A reading of the Act that left parents without an adequate remedy when a school district unreasonably failed to identify a child with disabilities would not comport with Congress' acknowledgment of the paramount importance of properly identifying each child eligible for services. Indeed, by immunizing a school district's refusal to find a child eligible for special-education services no matter how compelling the child's need, the School District's interpretation of

10

§ 1412(a)(10)(C) would produce a rule bordering on the irrational. ***It would be
particularly strange for the Act to provide a remedy, as all agree it does, when a
school district offers a child inadequate special-education services but to leave
parents without relief in the more egregious situation in which the school district
unreasonably denies a child access to such services altogether***.

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009) (emphasis added).

Consistent with the Supreme Court's reasoning, the Sixth Circuit has endorsed a "flexible
approach" to compensatory education, rejecting an hour-for-hour calculation to meet student need
more fully. Rather, the Sixth Circuit has directed that relief should be designed to "ensure that the
student is appropriately educated within the meaning of the IDEA, which may mean that that some
children be awarded fewer hours of compensatory education than they would have received in an
hour-for-hour calculation, while others may be rewarded more. *Bd. of Educ. of Fayette Cty., Ky.
v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007). The Sixth Circuit's approach "instructs courts to more
flexibly calculate compensatory education in terms of placing the student in the same position that
he or she would have occupied but for the school district's IDEA violations. *Bd. of Educ. of Fayette
Cty. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007) (*citing Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524,
365 U.S. App. D.C. 234 (D.C. Cir. 2005))." *Somberg v. Utica Cmty. Schs*, 908 F.3d 162, 176 (6th
Cir. 2018).

When a court holds that the public placement violated IDEA, it is authorized to grant such
relief as the court determines is appropriate. *Florence County Sch. Dist. Four v. Carter by &
Through Carter*, 510 U.S. 7, 15-16 (1993). Under this provision, equitable considerations are
relevant in fashioning relief and the court enjoys broad discretion in so doing. *Id*. Courts fashioning
discretionary equitable relief under IDEA must consider all relevant factors, including the
appropriate and reasonable level of reimbursement that should be required. *Id. See, also, Knable
v. Bexley City Sch. Dist.*, 238 F.3d 755, 771 (6th Cir. 2001) ("…we are mindful of the Court's

mandate in *Burlington* that equitable considerations are relevant in fashioning relief under 20 U.S.C. § 1415(e)(2). *See* 471 U.S. at 374.," *citing Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 374 (1985).).

### C. Standard of Review for Special Education Administrative Decisions

This Court reviews administrative decisions under the IDEA using a "modified de novo" standard and may hear additional evidence at a party's request. 20 U.S.C. § 1415(i)(2)(C). The Court must give "due weight" to the ALJ's findings, unless those findings are not "thorough and careful," and is required to make an independent judgment based on the preponderance of the evidence. *See Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir. 2004); 20 U.S.C. § 1415(i)(2)(C). *See also*, *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 997 (2017). The district court may set aside administrative findings in an IDEA case when "the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 519 (6th Cir. 2003). Courts are not bound by the administrative findings when they are unsupported by reasoning or are contrary to the preponderance of the evidence. *See Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 610 (6th Cir. 2006).

### IV. ARGUMENT

### A. This Court Lacks Subject-Matter Jurisdiction Because the Complaint Was Filed Beyond the Ninety-Day Jurisdictional Deadline Established by IDEA

MSCS filed its complaint challenging the Administrative Law Judge's (ALJ's) compensatory education award ninety-five days after the ALJ issued the Final Order on Remand on January 6, 2025. This five-day delay beyond the statutory deadline is fatal to this Court's subject-matter jurisdiction. The ALJ's January 6, 2025 order resolved every substantive issue that

the district court remanded for further administrative proceedings. Specifically, the order determined the amount of compensatory education to which K.B. is entitled (3,105 hours of ABA services and 18 hours of speech-language pathology services), established the structure for delivering that compensatory education (a tapering schedule), and created the delivery mechanism (a compensatory education fund). The order also affirmed that MSCS denied K.B. a FAPE at least through March 14, 2022 because the parties stipulated that the October 18, 2021 IEP was the operative IEP; and this Court had already found that the October 18, 2021 IEP denied K.B. a FAPE in the March 12, 2024 Order in K.B. I. Thus, the ALJ's January 6, 2025 order left no substantive issues for further administrative determination.[5]

This argument is properly made now that the Court issued its Order on Pending Motions in K.B. I, II, and III (ECF 33) (the February 23, 2026 Order). In the February 23, 2026 Order, the Court denied K.B.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed on May 21, 2025, reasoning that the IDEA's 90 day deadline for filing a civil action challenging the ALJ's final order governed and not Tenn. Code Ann. § 4-5-322. In so doing, this Court found that the Tennessee law was not "explicit" and therefore does not apply to IDEA special education cases. The Court did not, however, provide reasoning or analysis of K.B.'s argument that the clock should run from

---

[5] The subsequent January 27, 2025 ALJ order does not alter the finality of the January 6, 2025 order. The January 27, 2025 Order on Prevailing Rates addressed implementation details by establishing the hourly rates for Registered Behavior Technicians and Board Certified Behavior Analysts and calculating the total monetary value of the compensatory education award. This order did not modify the substantive compensatory education award but merely translated the hours awarded into dollar amounts for purposes of establishing the compensatory education fund.

Even if reconsideration procedures were authorized under IDEA (which they are not), the ALJ's February 10, 2025 Order on Reconsideration would not constitute a new final decision triggering a new ninety-day deadline. The February 10, 2025 order granted MSCS's reconsideration motion in part by clarifying certain procedural aspects while reaffirming the core compensatory education award. Clarification does not transform an order into a new final decision.

January 6, 2025 and not February 10, 2025. Instead, the Court reasoned that both parties challenged the February 10th order, both orders contained the label "final," and the February 10th order finished the ALJ's decision making.

However, because this Court has now decided that the very statute[6] that MSCS relied upon in filing its January 21 2025 Petition for Reconsider of the ALJ's January 6, 2025 Final Order does not apply, there simply are no grounds upon which MSCS can reasonably rely in making that argument. Allowing Tennessee's reconsideration procedures – which this Court has said do not apply – to reset IDEA's 90 day deadline would directly conflict with and undermine the federal statutory scheme. Congress established a 90 day deadline as an absolute limit for filing civil actions challenging IDEA administrative decisions. If state reconsideration procedures could reset that deadline, the federal 90 day limit would become meaningless. Parties could file reconsideration motions under state law to extend the deadline indefinitely, frustrating Congress's intent to provide a streamlined process with definite endpoints. Such a result would also violate the Supremacy Clause. USCS Const. Art. VI, Cl 2. *See, e.g.*, *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U. S. 645, 655 (1995). The United States Department of Education, Office of Special Education and Rehabilitative Services shared this position in an advisory letter in 2010: "Once a final decision has been issued, no motion for reconsideration is permissible." *Letter to Matthew Weiner*, 57 IDELR 79 (OSEP 2010) (*attached as* Ex. C; *see also*, https://sites.ed.gov/idea/files/idea/policy/speced/guid/idea/letters/2010-

---

[6] The same Tennessee statute, applicable to pending actions before the Administrative Procedures Division which is where special education due process cases are heard in Tennessee, that contains the 60 day deadline to appeal which this Court has held does not apply also provides procedures for appealing an ALJ's decision. Tenn. Code Ann. § 4-5-322(b)(2). MSCS cannot have it both ways. It cannot utilize a Tennessee statute to legitimize a motion for reconsideration while simultaneously arguing that its jurisdictional deadlines do not apply.

4/weiner102810dph4q2010.pdf (visited Mar. 5, 2026); *see also, C.C. v. Beaumont Indep. Sch. Dist.*, 2015 U.S. Dist. LEXIS 192513, *33 (E.D. Tex. 2015), *citing* to *Letter to Matthew Weiner*.

While the parties dispute many of the substantive findings of fact in the ALJ's January 6 and February 10, 2025 orders, the parties do not dispute any of the material facts concerning the authority of the ALJ to issue the February 10, 2025 order: we agree that the ALJ issued the January 6, 2025 Final Order (Ex. A), that MSCS filed its Petition for Reconsideration on January 21, 2025, and that the ALJ granted that motion in part by issuing the February 10, 2025 order and modifying the payment mechanism by which K.B. would receive his compensatory education award. All that is left for this Court to decide is whether the ALJ lacked authority to grant MSCS's petition for reconsideration. Thus, the ALJ's January 6, 2025 Order is the relevant order from which to count MSCS's jurisdictional deadline.

When a party files beyond a jurisdictional deadline, no court has power to hear the case, regardless of the merits of the underlying dispute or the reasons for the delay. Jurisdictional requirements are not subject to waiver, forfeiture, or equitable excuse because they define the fundamental authority of the court to adjudicate the matter. *See, e.g.*, *Peete-Jeffries v. Shelby Cty. Bd. of Educ.*, No. 2:22-cv-02003-TLP-tmp, 2022 U.S. Dist. LEXIS 224476, at *14 (W.D. Tenn. Dec. 13, 2022) (holding that the plaintiff had not met any of the Sixth Circuit's factors for waiver, estoppel, or equitable tolling despite being *pro se*, and also finding that the plaintiff's EEOC complaint filing deadline, while not jurisdictional, is similar to a statute of limitations deadline). MSCS could have filed a protective federal complaint within ninety days of the January 6, 2025 Final Order while simultaneously pursuing reconsideration before the ALJ. This approach would have preserved MSCS's right to federal judicial review while also pursuing the possibility of administrative reconsideration. MSCS's decision to rely exclusively on reconsideration and forego

filing a timely federal complaint was a strategic choice that cannot excuse its untimely filing. MSCS filed the instant complaint five (5) days too late on April 12, 2025, has no plausible excuse that justifies waiting until April 12, 2025, and this Court is required to dismiss the complaint.

**B. Alternatively, the Administrative Record Supports the ALJ's Compensatory Education Award Under Sixth Circuit Standards**

**1. Plaintiff MSCS Bears the Burden of Proof in Motions for Judgment on the Administrative Record in K.B. III.**

As the plaintiff in this case, MSCS bears the burden in challenging the ALJ's final order. *Board of Educ. v. Board of Educ.*, 1993 U.S. Dist. LEXIS 21316, *61 and *n.17 (S.D. Ohio 1993), *citing Cordrey v. Euckert*, 917 F.2d 1460, 1469 (6th Cir. 1990), *cert. denied*, 499 U.S. 938, 111 S. Ct. 1391, 113 L. Ed. 2d 447 (1991), *Doe v. Defendant I*, 898 F.2d 1186, 1191 (6th Cir. 1990); *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C.Cir.1988); *Spielberg v. Henrico County Pub. Sch.*, 853 F.2d 256, 258 n.2 (4th Cir. 1988), *cert. denied*, 489 U.S. 1016 (1989). *See, also, Sch. for Arts in Learning ("SAIL") Pub. Charter Sch. v. Hawkins*, 2008 U.S. Dist. LEXIS 145553, *6 (D.D.C. 2008) ("The burden of proof in an IDEA civil action is always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong [by a preponderance of the evidence]." *Kerkam v. McKenzie*, 862 F.2d 884, 887, 274 U.S. App. D.C. 139 (D.C.Cir.1988).").

**2. The Administrative Record Supports the ALJ's Order.**

The ALJ's January 6, 2025 and the included compensatory education award is supported by substantial evidence in the administrative record and fully comports with Sixth Circuit standards for remedying violations of the IDEA. The order is detailed, considers testimony and evidence presented by both K.B. and MSCS, and is specifically tailored to address K.B. and his unique needs. The award employs a flexible, qualitative approach tailored to K.B.'s individual

needs, is remedial rather than punitive, and rests on compelling expert testimony, objective progress data, and comprehensive assessment evidence. The ALJ's award here reflects precisely this type of carefully calibrated, evidence-based remedy.

The administrative record contains overwhelming evidence supporting the ALJ's determination that K.B. requires at least 3,105 hours[7] of compensatory ABA therapy services. This evidence includes convergent expert testimony from multiple qualified professionals, comparative progress data demonstrating quantifiable educational loss, comprehensive assessment data documenting persistent educational gaps, and evidence of the school district's capacity constraints that necessitate the compensatory education fund approach.

### 3. MSCS's Staffing Constraints and the Lengthy, Contentious Nature of this Litigation Support the Compensatory Education Fund Approach

As detailed in the ALJ's January 6, 2025 Final Order, the administrative record establishes that during the 2020-2022 period, MSCS lacked the requisite staff to provide the services that K.B. needs. Jennifer Wyatt testified that she is the only Board Certified Behavior Analyst (BCBA) employed by MSCS and – to her knowledge – is the only BCBA employed by MSCS since 2014. Dec. 4, 2024 Hr'g Tr., Vol. III, p. 352; *see also*, ECF 97, PgID 5210.[8] Ms. Wyatt made clear during her testimony in federal court and then again this month that Respondent definitely did not have an RBT available for K.B. at any point during the 2021-2022 school year. *Compare* ECF 14-7, PgID 2414-15 with ECF 97, PgID 5213; see also ECF 97, PgID 5211; Dec. 4, 2024 Hr'g Tr., Vol.

---

[7] In fact – sadly – Dr. Irby testified that, "So like all of that time lost no matter how much ABA we give you if you've lost two years of essential access to ABA no matter how much ABA I give you I can't make up for the time lost.· So I might be able to improve your skills or I might be able to decrease problem behaviors and things like that, but I'm never going to be able to get you to the point that you would have been had you received services during those two years." Hr'g Tr. Dec. 3, 2024, Vol. I at p. 81. In other words, K.B. will never full recover from the harm MSCS has caused.

[8] All ECF record numbers in this section refer to K.B. I, Case No. 2:22-cv-02464.

III, pp. 354-56, 366.  Ms. Wyatt also made the incredulous claim that she served as K.B.'s full-time RBT and did not fulfill any of her other job duties:

> So during that time before -- before I had somebody certified as an RBT, I was there every day serving that role. All those responsibilities fell on me. He was more of following what I was doing. I was training him on the job, so I was the one giving the direct instruction of what to do, what was next. All my other responsibilities of my job were given to other people. There was nobody else that needed -- that needed the license of BCBA at that time, so I was able to give out my entire concentration just to K.B. the entire time and help with the RBT. I didn't leave the RBT at any time, other than to maybe run to the bathroom, like he would do, to take a break.

ECF 97, PgID 5236. However, Ms. Wyatt also testified that her job duties are "so many to name." ECF 97, PgID 5212-13. Given that MSCS is the largest school district in the state and one of the largest school districts in the nation and given the prevalence of autism (not to mention other disabilities that benefit from ABA and the services of a BCBA) and the recognition that ABA is the gold standard for addressing autism, the notion that nobody else in the entire school district needed the services of a BCBA for any time period – especially not a time period exceeding an entire school year – is either preposterous, tragic, or both.[9]

This severe staffing constraint made it practically impossible for MSCS to directly provide the intensive ABA services K.B. required during that period. While MSCS has subsequently hired additional staff, the capacity constraints that existed during the relevant period support the ALJ's determination that a compensatory education fund controlled by K.B.'s parent, with parent

---

[9] *See* http://www.scsk12.org/about/. According to MSCS's website, MSCS serves over 106,000 students with almost 14,000 employees. (*Id*.). According to the Centers for Disease Control (CDC), one in 44 children has been identified with autism spectrum disorder. *See* https://www.cdc.gov/ncbddd/autism/ data.html. ABA is the gold standard for treatment of autism and is also used to help many different kinds of learners. *See, e.g*., https://www.autismspeaks.org/applied-behavior-analysis.

selection of qualified providers, is the appropriate mechanism for delivering the compensatory services.

The Sixth Circuit has approved flexible funding mechanisms, including parent-controlled funds, as appropriate means of delivering compensatory education. Private placement is appropriate in cases in which the relationship between the parents and the school have significantly deteriorate: "However, it is very clear to the court that the contentious relationship that has developed between the parties over the course of this case's long history make Defendant's direct participation in supplying any such education inappropriate." *Somberg v. Utica Cmty. Sch*., No. 13-11810, 2017 U.S. Dist. LEXIS 7845, at *7-8 (E.D. Mich. Jan. 20, 2017). The *Somberg* court solved this by awarding "1,200 hours of compensatory education to be paid by the defendant, a special master to oversee, one year of transition planning." *Id*. at *15. The Sixth Circuit upheld this solution, holding that:

> And as justification for ordering [the school district] to pay for compensatory education, rather than ordering [the school district] to directly provide such education, the district court pointed to "the contentious relationship that has developed between the parties over the course of this case's long history." … The court therefore did not abuse its discretion in concluding that the most equitable solution would be to order [the school district] to pay for Dylan's compensatory education, overseen by a special master, rather than force the parties to remain in their hostile relationship.

*Somberg v. Utica Cmty. Schs*, 908 F.3d 162, 176-77 (6th Cir. 2018).

In this case, unfortunately no appropriate private school in the Memphis area exists for K.B. Allowing K.B.'s family to choose the ABA provider (BCBA) provides a workable solution to that problem even though K.B. will continue to attend an MSCS school. It also solves the issue that MSCS is incapable of providing sufficient ABA services.

"When a hearing officer concludes that a student has been denied a FAPE, the hearing officer has "broad discretion to fashion an appropriate remedy, which can go beyond prospectively

providing a FAPE, and can include compensatory education." *B.D. v. Dist. of Columbia*, 817 F.3d

792, 797-98, 422 U.S. App. D.C. 18 (D.C. Cir. 2016) (internal quotation marks omitted and citation

omitted); 20 U.S.C. § 1415(i)(2)(C)(iii)." *D.C. Int'l Charter Sch. v. Lemus*, 660 F. Supp. 3d 1, 8

(D.D.C. 2023). The Sixth Circuit has not only similarly affirmed the broad discretion of hearing

officers, but has also opined that compensatory education is one form of relief available to

reimburse parents for the cost of obtaining the educational services that the school district should

have provided:

> In so doing, the court has broad discretion. *Knable ex rel. Knable v. Bexley City
> Sch. Dist.*, 238 F.3d 755, 770 (6th Cir. 2001). One type of relief that a court may
> provide is an award of compensatory education. *L.M.*, 478 F.3d at 316 ("An award
> of compensatory education is an equitable remedy that a court can grant as it finds
> appropriate [under § 1415(i)(2)(C)(iii)]."). **Compensatory education is "[a]
> judgment that simply reimburses a parent for the cost of obtaining educational
> services that ought to have been provided free.**" *Hall v. Knott Cty. Bd. of Educ.*,
> 941 F.2d 402, 407 (6th Cir. 1991).

*Somberg*, 908 F.3d at 171 (emphasis added). The Supreme Court has similarly upheld

reimbursement when parents have placed their children in private schools following a public

school district's denial of FAPE: "An order awarding reimbursement of private-education costs

when a school district fails to provide a FAPE merely requires the district "to belatedly pay

expenses that it should have paid all along." *Burlington*, 471 U.S., at 370-371." *Forest Grove Sch.

Dist. v. T. A.*, 557 U.S. 230, 246 (2009). Here, K.B.'s family simply could not afford to place K.B.

in private school. Nor have they been able to privately pay for ABA services outside of school.

The fund approach ensures that K.B. will receive quality services from qualified ABA providers

without being constrained by MSCS's limited internal capacity.

The ALJ's determination that the award should be funded through a compensatory

education fund controlled by K.B.'s parent, with parent selection of qualified providers, is

consistent with Sixth Circuit precedent and is justified by the evidence in the administrative record.

## V.    CONCLUSION

For the foregoing reasons, K.B., by and through his parent, respectfully requests that this Court

grant this motion to dismiss pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, uphold the

ALJ's January 6, 2025 Final Order.

<div style="margin-left:40%">

Respectfully submitted,

 /s/ *Janet H. Goode*
Janet H. Goode, TN BPR #35872
917 S. Cooper Street
Memphis, Tennessee 38104
(901) 308-7511
janet@janetgoodelaw.com

/s/ *Michael F. Braun*
MICHAEL F. BRAUN (BPR 032669)
5016 Centennial Boulevard, Ste. 200
Nashville, TN 37209
(615) 378-8942
mfb@braun-law.com

**Attorneys for Defendant**

</div>

<div style="text-align:center">

**CERTIFICATE OF SERVICE**

</div>

I certify that on March 5, 2026, I filed a copy of the foregoing by means of the Official

Court Electronic Document Filing System (CM/ECF) for the Western District of Tennessee, which

simultaneously sent a copy to all counsel of record including counsel for the MSCS, Memphis-

Shelby County Schools, Office of General Counsel, 160 Glenn Rodgers Sr. Street (Formerly

Known as S. Hollywood St), Coe Building, Room 218, Memphis, TN 38117, Laura Bailey, Senior

Associate    Counsel,    at    baileyla@scsk12.org,    and    Christian    West-Coleman    at

westcolemanc@scsk12.org.

<div style="margin-left:40%">

Signed:        /s/*Janet H. Goode*
                    Janet H. Goode

</div>